Filed 4/26/21  P. v. Tompkins CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059007 |
| v. | (Super. Ct. No. 15WF1376) |
| SHAWN MARSHALL TOMPKINS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Michael J. Cassidy.  Affirmed.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Shawn Marshall Tompkins on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against her client but advised the court she found no issues to argue on his behalf.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When the appellant himself raises specific issues in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.)

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised the following six issues: (1) did the trial court err by denying Tompkins' motion to suppress/exclude the DNA evidence secured from the victim's clothing; (2) did the court err by denying Tompkins' motion to suppress/exclude the DNA evidence obtained by the taking of a buccal swab of Tompkins' mouth; (3) did the court err by overruling Tompkins' chain of custody objections to the DNA evidence; (4) did the court err by denying Tompkins' motion for new trial based on ineffective assistance of counsel; (5) did the court abuse its discretion by denying Tompkins' request to strike his priors; and (6) was Tompkins denied his Sixth and Fourteenth Amendment right to the effective assistance of counsel because counsel did not request mental health diversion.

We gave Tompkins 30 days to file written argument on his own behalf. Thirty days have passed, and he has not filed any written argument.

2

We have independently reviewed the record in accordance with our obligations under *Wende* and *Anders*, and we found no other arguable issues on appeal. We affirm the judgment.

## FACTS

C.T. (Cashier) was working at a food store in Garden Grove. Shortly before 9:00 p.m., Cashier was assisting C.N. (Customer) with lottery tickets when two men wearing ski masks entered the store. One man wore a multi-colored striped hooded sweatshirt and the other wore a solid dark-colored hooded sweatshirt. The man wearing the striped sweatshirt pushed Customer and said, "'give me your wallet.'" Customer, who was 5 feet 4 inches tall, estimated the man in the striped sweatshirt was about six feet tall. The man pushed Customer to the ground, hit him multiple times, and dragged him by the legs as Customer tried to hold onto his wallet. When he could no longer resist, the man yanked the wallet out of his right hand. Meanwhile, the other masked man, approached Cashier, pointed a gun at her, and told her to open the cash register or he would shoot. Cashier, who was nervous and scared, was unable to open the cash register. While she tried to open the cash register, the two men ran out of the store. Customer chased after the men yelling for help. Customer had $30, credit cards, and his lottery tickets in his wallet. The robbery was recorded on video and was played for the jury.

After the robbery, Cashier called the police, who arrived shortly thereafter. Customer described the man in the striped sweatshirt as Hispanic, six feet tall, and 160 pounds. He believed both men were Hispanic and had "some kind of beard or whiskers." Customer described the other man as "not tall." Neither man removed his ski mask during the robbery. Cashier was unable to describe either of the two men.

3

Officer Angela Ledesma, who served as the crime scene investigator, learned Customer had been in an altercation with one of the suspects. She watched the video and saw he had been in direct contact with the suspect in the striped sweatshirt who was not wearing gloves. Believing the suspect may have left contact DNA on Customer's clothing when he hit and dragged him, Ledesma collected tape lift samples from his sweater sleeves and pants. After collecting the tape lifts, Ledesma secured each to plastic film and labeled them. Ledesma also obtained DNA samples from Customer's face, glasses and his hand. Ledesma did not collect Customer's actual clothes because she did not think he had an extra set of clothes with him. Ledesma submitted the DNA swabs and tape lifts to the crime lab for processing.

Detective Steven Heine was assigned to investigate the case. He viewed the surveillance video and made still photographs from the video. Heine noticed the suspect touched Customer around his shoulders and on his legs. Heine went to the location and saw the strip marking in the center of the door accurately reflected the height represented. From the video, Heine estimated both suspects were between "five and a half and six feet tall." He indicated it was difficult to estimate because he could not see the top of their heads.

Heine received information from the Combined DNA Index System (CODIS), that Tompkins' DNA matched the evidence submitted in this case. Heine learned Tompkins was on parole for an unrelated offense and he made arrangements with Tompkins' parole officer to be at the agent's office when Tompkins arrived. When Tompkins met with his parole officer, Heine was there and collected Tompkins' DNA to confirm the information he received from CODIS. Heine also collected the black high-top Air Jordan shoes with white soles Tompkins was wearing, which looked "extremely similar" to the shoes worn by the suspect in the striped sweatshirt. Heine estimated Tompkins was 5 feet 8 inches tall and weighed approximately 150 pounds.

4

Forensic Scientist Lisa Winter analyzed the DNA. DNA was extracted from the swab from the tape lifts and Winter concluded there was a mixture of DNA from two main contributors and one minor contributor. Winter concluded Customer was one of the main contributors to the DNA on both the pants and the sweater. Winter also concluded Tompkins could not be excluded as the second main contributor from the DNA obtained from the sweater or pants tape lift samples. Winter explained the frequency estimate on this sample was rarer than one in one trillion people.

Tompkins testified he was 34 years old. He suffered felony convictions involving moral turpitude in 2003, 2005, and 2014 and spent a great deal of his adult life in prison. Tompkins started getting into trouble when he was 11 or 12 years old and got out of prison in December 2014. Tompkins testified that after he got out of prison, he decided he did not want to live life as a criminal and wanted to become a better person. He got married, had a daughter, and got a job. He paid bills and stayed away from people he should not be associating with. He was complying with his parole requirements and met with his parole officer once a week. Tompkins said he was living with his family in Anaheim, and in February 2015, he started a job at a warehouse where he worked until he got pneumonia. After that, he started to help a friend that was a Super Shuttle driver. He assisted with greeting customers and helped at the airport and hotels.

Tompkins denied being one of the people shown in the video of the robbery and denied he was at the store on the day of the robbery. Tompkins was 5 feet 7 or 8 inches tall, although his booking report shows he was 5 feet 9 inches tall and weighed 132 pounds. He denied knowing Customer and could not explain how his DNA ended up on Customer's sleeves and pants. When Tompkins spoke with Heine, who asked him about his whereabouts on a particular day, Tompkins said he could not remember where he was, and he still did not remember where he was on the day of the robbery. Tompkins

told Heine that he did not ever remember being at a liquor store in Garden Grove, but then stated he may have been at some type of 7-Eleven there.

A jury convicted Tompkins of second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c)) (count 1-Customer), and attempted second degree robbery (Pen. Code, §§ 664, subd. (a), 211, 212.5, subd. (c)) (count 2-Cashier).[1]

After Tompkins replaced his retained attorney with a new attorney, he filed a motion for a new trial because he received ineffective assistance of counsel. At a hearing, the trial court denied the motion. On the same date, the court found Tompkins suffered two prior strikes (Pen. Code, §§ 667, subds. (d), (e)(2)(A); 1170.12, subds. (b), (c)(2)(A)), and two prior serious felonies (Pen. Code, § 667, subd. (a)(1)). The court dismissed three prison priors (Pen. Code, § 667.5, subd. (b)), pursuant to Senate Bill No. 136. The court sentenced Tompkins to prison for 25 years to life on count 1 and a concurrent term on count 2. The court struck the serious felony priors for purposes of sentencing. Tompkins filed a timely notice of appeal.

DISCUSSION

A review of the record pursuant to *Wende, supra*, 25 Cal.3d 436, and *Anders, supra*, 386 U.S. 738, including the possible issues raised by appellate counsel, has disclosed no reasonably arguable appellate issue.

---

[1] At the close of the prosecution's case, the trial court granted Tompkins' motion to dismiss an assault with a semiautomatic firearm count (Pen. Code, § 245, subd. (b)), and firearm allegations (Pen. Code, § 12022, subd. (a)(1)), as to counts 1 and 2.

DISPOSITION

The judgment is affirmed.

_____
O'LEARY, P. J.

WE CONCUR:


_____
MOORE, J.


_____
GOETHALS, J.